UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Civil Action Number:

ANDRES GOMEZ, On His Own Behalf, and On
Behalf of All Other Individuals Similarly Situated

    Plaintiffs,
vs.

LUXOTTICA SUN CORP.,
d/b/a Lenscrafters,

    Defendant,

## COMPLAINT – CLASS ACTION

COMES NOW Plaintiff Andres Gomez, on his own behalf and on behalf of all Other Individuals Similarly Situated, by and through their undersigned counsel, hereby sue Defendant Luxottica Sun Corp. for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§12181-12189 ("ADA"), 28 C.F.R. Part 36 and allege as follows:

### INTRODUCTORY STATEMENT

1. Plaintiffs bring this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant Luxottica Sun Corp.'s website which is an extension of its stores throughout the United States of America where the law of the American with Disabilities Act has been the law of the land for over twenty-six years.

1

2. Defendant Luxottica Sun Corp. (also referenced as "Defendant") owns and operates places of public accommodation under the brand name "Lenscrafters," which are purveyors of customized prescription and cosmetic eyewear and contact lenses, wherein most locations have attached Optometrist offices where patrons can schedule and receive eye examinations with a licensed Optometrist.

3. The Defendant offers an adjunct website www.Lenscrafters.com ("website") which is directly connected to its Lenscrafters stores since the website provides a site locator to the Defendant's Lenscrafters physical store locations (places of public accommodation) and offers the service of online scheduling eye examinations at the various Lenscrafters physical locations. Thus, www.Lenscrafters.com ("website") has a true nexus to the Defendant's Lenscrafters stores.

4. This case arises out the fact that Defendant Luxottica Sun Corp. has operated its business in a manner and way that completely excludes individuals with disabilities who are visually impaired from enjoying and visiting their place of public accommodation, namely the Defendant's website www.Lenscrafters.com.

5. This is an action to put an end to civil rights violations of Defendant Luxottica Sun Corp. against individuals with disabilities who are visually impaired and who cannot access and comprehend the Defendant's website www.Lenscrafters.com due to the barriers to access therein.

**JURISDICTION & VENUE**

6. This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, and 28 C.F.R. § 36.201.

7. This is also an action for declaratory and injunctive relief to prevent discrimination which includes equal access to internet website for services to order Lenscrafters services online.

8. Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendants reside in this District, the Defendants transact business in this District, and the acts constituting the violation of the ADA occurred in this District.

9. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Andres Gomez**

10. Plaintiff Andres Gomez ("Plaintiff Gomez") is a resident of the state of Florida and resides within the Southern judicial district, is *sui juris*, is disabled as defined by the ADA and the Rehabilitation Act.

11. Plaintiff Gomez suffers from what constitutes a "qualified disability" under the ADA. Plaintiff Gomez is legally blind, and therefore is substantially limited in performing one or more major life activities, including but not limited to accurately visualizing his world, adequately traversing obstacles and walking without assistance. The Plaintiff's disability is defined in 42 U.S.C. §12012 (1)(A) and in 42 U.S.C. 3602, §802(h).

**Other Plaintiffs Similarly Situated**

12. Other plaintiffs similarly situated to Plaintiff are qualified individuals with disabilities under, and as defined by, the ADA.

13. Other plaintiffs are also similarly situated to Plaintiff by virtue of the fact that they are disabled with visual impairments and require screen reader software (which

3

is commercially available) in order to comprehend the Defendant's website to become informed of the Defendant's Lenscrafters store locations and the Defendant's services (see ¶14).

**Luxottica Sun Corp.**

14. Defendant Luxottica Sun Corp. (also referenced as Defendant) is the owner and operator of a chain of stores under the brand name "Lenscrafters."

15. Defendant Luxottica Sun Corp.is authorized to conduct, and is conducting, business within the State of Florida and within the jurisdiction of this court.

## FACTS

16. The Defendant is defined as a "public accommodation" because it is an entity which owns and operates a chain of stores under the brand name "Lenscrafters," each of which is a "Place of Public Accommodation," 42 U.S.C. § 12181(7)(E) and 28 C.F.R. § 36.104. (2) or "[P]laces of public accommodation," "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment." Each of the Defendant's Lenscrafters stores are a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(E) and 28 C.F.R. Part 36. The Defendant's Lenscrafters stores are also referenced throughout as "place(s) of public accommodation," "Lenscrafters stores," or "stores."

17. Additionally, the Defendant is defined as a "public accommodation" because its Lenscrafters stores also offer the service of independent optometric examinations either within its in-store locations or in directly adjacent optometric offices, which meets the definition of a "Place of Public Accommodation", 42 U.S.C. §

12181(7)(F) as "[A] laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment."

18. The Defendant's website www.Lenscrafters.com ("website") is offered to provide the general public information including but not limited to information on the various locations of the Defendant's Lenscrafters stores throughout the United States and within the state of Florida.

19. Since the Defendant's website allows the general public the ability to locate one of the many Lenscrafters physical store locations, the website is an extension of the physical Lenscrafters stores. Therefore, the website has a direct nexus between the website and the Defendant's Lenscrafters stores, hence the website is also characterized as a place of public accommodation (42 U.S.C. §§S 12181(7)(E)).

20. Furthermore, the website provides the general public the ability to schedule an eye exam at any of the store locations. Therefore, the website has a direct nexus between the website and the Defendant's Lenscrafters stores, hence the website is also characterized as a place of public accommodation (42 U.S.C. §12181(7)(F)).

21. The website also allows the general public access to purchase cosmetic eyewear, customized prescription eyewear, and contact lenses. As such, the website is a sales establishment, which is a public accommodation pursuant to 42 U.S.C. § 12181(7)(E), and must comply with the ADA, which means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the general public. As such, the Defendant has subjected itself and

the website it has created and maintains, to the Americans with Disabilities Act ("ADA").[1]

22. Plaintiff Gomez is a customer who is interested in services such as comprehensive eye exams, vision care and customized prescription glasses, all of which such items are offered through the Defendant's Lenscrafters stores and through its website www.Lenscrafters.com.

23. Plaintiff Gomez frequently utilizes the internet. In order to comprehend information available on the internet and access/comprehend websites, Plaintiff Gomez uses commercially available screen reader software to interface with the various websites.

24. In order to comprehend the Defendant's website (¶3) and to become informed of the Defendant's services such as comprehensive eye exams, vision care and customized prescription glasses, Plaintiff Gomez must use screen reader software.

25. During March, 2016, the Plaintiff attempted to utilize the Defendant's website to browse through the services. The Plaintiff utilizes JAWS Screen Reader software (hereinafter referenced as "screen reader software"), which is the most popular screen reader software utilized worldwide as it allows individuals who are visually impaired to comprehend information available on the internet and access websites.

26. However, the Defendant's website did not integrate with Plaintiff's screen reader software, nor was there any function within Defendant's website to permit access for visually impaired through other means.

---

[1] "*The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities.*" ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

27. Plaintiff Gomez continues to desire to patronize the Defendant's website, but is unable to do so as he is unable to comprehend the Defendant's website, thus he will continue to suffer irreparable injury from the Defendant's intentional acts, policies, and practices set forth herein unless enjoined by this Court.

28. The Defendant's website did\does not offer an adequate system to permit a disabled person with a visual impairment (who requires screen reader software) to comprehend its website in an effective manner.

29. The Defendant's website is\was not designed and programmed to interface with commercially available screen reader software for disabled individuals who are visually impaired in the same manner as the website is offered to the general public.

30. The Defendant's website is\was so poorly functional for visually impaired individuals who require screen reader software, that any utilization of the website contains barriers that prevent full and equal use (of the website) by individuals with disabilities who are visually impaired.

31. On information and belief, the Defendant has not designated an employee as a Web Accessibility Policy to insure full and equal use of its website by individuals with disabilities.

32. On information and belief, the Defendant has not instituted a Web Accessibility Committee to insure full and equal use of its website by individuals with disabilities.

33. On information and belief, the Defendant has not designated an employee as a Web Accessibility Coordinator to insure full and equal use of its website by individuals with disabilities.

34. On information and belief, the Defendant has not instituted a Web Accessibility User Accessibility Testing Group to insure full and equal use of its website by individuals with disabilities.

35. On information and belief, the Defendant has not instituted a User Accessibility Testing Group to insure full and equal use of its website by individuals with disabilities.

36. On information and belief, the Defendant has not instituted a Bug Fix Priority Policy.

37. On information and belief, the Defendant has not instituted an Automated Web Accessibility Testing program.

38. On information and belief, the Defendant has not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

39. On information and belief, the Defendant has not created and instituted on its website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have its website, Applications, and Digital Assets accessible to the visually impaired community.

40. On information and belief, Defendant's website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility[2]

---

[2] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)

41. Thus, the Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages and accommodations provided by and through its website www.Lenscrafters.com.

42. Under the ADA, all places of public accommodation must ensure that the disabled individuals enjoy full and equal enjoyment of its goods and services by making reasonable modifications to its services and sales policies and procedures.

43. Public Accommodations that use the Internet for communications regarding their programs, goods or services, must offer those communications through adequate accessible means as well.

44. For many individuals with disabilities who are limited in their ability to travel outside their home, the internet is one of the few available means of access to the goods and services in our society. The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet websites, such as the Defendant's website.

45. On information and belief, the Defendant is aware of these common access barriers within its website which prevent individuals with disabilities who are visually impaired from the means to comprehend its website to become informed of its Lenscrafters brand merchandise available in its various physical store locations and available for purchase online.

46. Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

47. Such barriers result in punishment and isolation of blind and low vision from the rest of society.

48. Thus, the Defendant has refused to make its website accessible to individuals with disabilities who are visually impaired.

49. Enforcement of the Plaintiff's rights is right and just pursuant to 28 U.S.C. §§2201, 2202.

50. The Plaintiff has retained the law offices of Scott R. Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

## CLASS ACTION ALLEGATIONS

51. Plaintiff Gomez brings this case as a class action pursuant to Federal Rule of Civil Procedure Rule 23, in that the class is so numerous that joinder of all members is impracticable, there are questions of law and fact common to the class [F.R.C.P. Rule 23(a)(1)], the claims and defenses of the representative party is typical of those of the class [F.R.C.P. Rule 23(a)(3)], and Plaintiff Gomez (as the representative party) will fairly and adequately protect the interests of the class [F.R.C.P Rule 23(a)(4)].

52. The Defendant owns and/or operates over eight hundred and fifty Lenscrafters stores in Canada, the United States, Puerto Rico, and Hong Kong. The Defendant's website www.Lenscrafters.com services the various Lenscrafters locations represented by its physical sales locations and services on-site Optometrist offices by allowing the general public to schedule an eye exam through the website. The website also provides the general public the ability to purchase customized prescription and cosmetic eyewear and contact lenses online.

53. According to Statistic Brain Research Institute[3], in 2014, online sales in the United States exceeded $304 Billion U.S. Dollars. On average, 87% of Americans that have browsed online stores such as travel bags have made an internet purchase, while 57% of Americans that have browsed online stores have made a purchase multiple times.

54. According to the National Federation for the Blind[4], there are 6,670,300 Americans with visual disabilities, and 434,600 within the state of Florida.

55. Thus, the Class of Others Similarly Situated to Plaintiff Gomez which is to be represented by Plaintiff Gomez is so numerous (6,670,300 visually impaired Americans throughout the United States and 434,600 in the state of Florida) that a joinder of each individual member is impracticable; F.R.C.P. Rule 23(a)(1).

56. Plaintiff Gomez is a representative of the Class due to the fact that he suffers from a qualified disability, he is visually impaired, and he requires screen reader software interface in order to comprehend and effectively communicate with public accommodations on the internet, such as the Defendant's website.

57. The questions of law and fact relating to the representative Plaintiff are similar and common to the law and fact questions which would be raised by other members of the Class if they were individually named plaintiffs herein.

58. Similarly, the claims and defenses to be raised by and against the parties herein are typical of the claims or defenses which would be raised by the members of the Class if they were a party to this action.

---

[3] US Commerce Department, Forrester Research date: October 9, 2014, See http://www.statisticbrain.com/total-online-sales/
[4] Statistics for 2012, see http://www.NFB.org/blindness-statistics

59. The Plaintiff seeks injunctive relief for the implementation of the relief provide by the ADA which is the same relief which would be sought by each class member if he or she brought a claim individually. Accordingly, Plaintiff Gomez (as the representative party for the Class) will fairly and adequately protect the interests of the Class.

60. The relief sought herein is for the benefit of all members of the Class and consistent injunctive relief should be provided for each member of the Class.

61. Prosecution of this matter by individual members of the Class would only create a risk of inconsistent and varying adjudications and the establishment of incompatible standard by defendant and adjudication which may be dispositive of the interest of the other Class members.

62. The questions of law and fact common to the members of the Class, such as the degree of non-compliance, which will be raised and adjudicated herein, predominate over any questions affecting only the individual Plaintiff or individual members of the Class. As a result, this class action is the optimal method for reaching a fair and efficient adjudication of the controversy raised herein.

63. The Defendant has discriminated against Plaintiff Gomez and the members of the Class by denying effective communication through its website.

64. The Defendant has failed to provide any mechanism by which to adequately serve visually impaired individuals such as Plaintiff Gomez and others similarly situated. The Defendant is operating in violation of Plaintiffs' rights as protected by the ADA and is entitled to injunctive relief. 42 U.S.C. §12188.

65. Plaintiff Gomez and others similarly situated have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory judgment and injunctive relief is their only means to secure adequate redress from the Defendant's unlawful and discriminatory practices.

66. Plaintiff Gomez and others similarly situated will continue to suffer irreparable injury from Defendant's intentional acts, policies, and practices set forth herein unless enjoined by the court.

67. Notice to the Defendants is not required as a result of the Defendant's failure to cure the violations.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

68. Plaintiff Gomez and others similarly situated re-allege and incorporate by reference the allegations set forth in ¶¶s 1-67 above

69. The Department of Justice has long taken the position that both State and local government websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities[5].

70. As a result of the inaccessibility of the Defendant's website and by the barriers to access in its website (when removal of those barriers is readily achievable), the Defendant has denied individuals with disabilities who are visually impaired full and equal enjoyment of the information and services that the Defendant has made available to

---

[5] See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

the general public in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

71. Pursuant to 42 U.S.C. §12181(7)(E), the Defendant's website is a *place of public accommodation* under the ADA because it serves to augment its chain of Lenscrafters stores by providing the general public information on the various locations of the Defendant's chain of Lenscrafters stores, and allows the general public the ability to purchase cosmetic eyewear, customized prescription eyewear, and contact lenses online.

72. Pursuant to 42 U.S.C. § 12181(7)(F) ), the Defendant's website is a *place of public accommodation* under the ADA because it serves allow the general public the ability to schedule an optometric examination online (which would then be performed at one of the Defendant's Lenscrafters in-store Optometry offices or adjacent optometric office.

73. As such, the Defendant's website must be in compliance with the ADA. However, the Defendant's website is\was not in compliance with the ADA. Plaintiff Gomez and others similarly situated have suffered an injury in fact because of the website's (and Defendant's) non-compliance with the ADA.

74. Types of website programming errors include (but are not limited to) *Programming Error Types* ("PETs"), which are easily identifiable and correctable, and *Programing Alert Error Types* ("PATs"), which prone to making the website inaccessible.

75. A sampling review of just part of the Defendant's website revealed that the website is not functional for users who are visually impaired. The Defendant's

14

website contains several types of PETs (easily identifiable and correctable), which occur on throughout the website such as:

1) The language of the document is not identified,
2) Image alternative text is not present, and
3) A form control does not have a corresponding label.

76.     Further, the Defendant's website contains various types of PATs (prone to making the website inaccessible), which occur throughout the website, such as:

1) Alternative text is likely insufficient or contains extraneous information,
2) An event handler is present that may not be accessible,
3) A heading level is skipped,
4) Flash content is present,
5) Adjacent links go to the same URL,
6) A link contains no text, and
7) Alternative text is likely insufficient or contains extraneous information.

77.     More violations may be present on other pages of the website, and they will be determined and proven through the discovery process.

78.     Further, the Defendant's website did\does not offer include the universal symbol for the disabled[6] which would permit disabled individuals to access the website's accessibility information and accessibility facts.

79.     Therefore, due to the Plaintiff's disability and the Defendant's failure to have the website adequately accessible to individuals with visual impairments, the Plaintiff was unable to comprehend the Defendant's website.

80.     The Defendant has violated the ADA (and continues to violate the ADA) by denying access to individuals with disabilities who are visually impaired and who

---


[6]

require the assistance of interface with screen reader software to comprehend and access internet websites. These violations are ongoing.

81. As a result of the Defendant's inadequate development and administration of its website, Plaintiff Gomez and others similarly situated are entitled to injunctive relief pursuant to 42 U.S.C. §12133 to remedy the discrimination.

82. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Gomez and others similarly situated injunctive relief; including an order to:

    a) Require Defendant Luxottica Sun Corp. to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of www.Lenscrafters.com to a statement as to Lenscrafters Stores, Inc.'s policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its website, and

    b) Require Defendant Luxottica Sun Corp. to cease and desist discriminatory practices and if necessary to cease and desist operations of the website known as www.Lenscrafters.com until the requisite modifications are made such that its website becomes equally accessible to persons with disabilities.

83. Plaintiff Gomez has been obligated to retain the undersigned counsel for the filing and prosecution of this action. The Plaintiff and others similarly situated are entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Luxottica Sun Corp.

WHEREFORE, Plaintiff Andres on his own behalf and on behalf of all other Individuals Others Similarly Situated hereby demand judgment against Defendant Luxottica Sun Corp. and request the following injunctive and declaratory relief:

a) The Court issue a declaratory judgment that Defendant Luxottica Sun Corp. has violated the Plaintiff's rights as guaranteed by the ADA;

b) The Court enter an Order granting temporary, preliminary and permanent injunction prohibiting Defendant Luxottica Sun Corp. from operating its website www.Lenscrafters.com without adequate accommodation for the visually impaired community;

c) The Court enter an Order requiring Defendant Luxottica Sun Corp. to update website to remove barriers in order that individuals with visual disabilities can access the website to the full extent required by the Title III of the ADA;

d) The Court enter an Order requiring Defendant Luxottica Sun Corp. to clearly display the universal disabled logo[7] within its website, wherein the logo would lead to a page which would state Luxottica Sun Corp.'s accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of website www.Lenscrafters.com;

---

[7] 

e) The Court enter an order requiring Defendant Luxottica Sun Corp. to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

f) The Court enter an Order directing Defendant Luxottica Sun Corp. to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow the Defendant to undertake and complete corrective procedures to website known as [www.Lenscrafters.com](www.Lenscrafters.com).

g) The Court award reasonable attorney's fees, compensatory damages, all costs (including, but not limited to court costs and any expert fees), and other expenses of suit, to the Plaintiff; and

h) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 9th day of May, 2016.

Respectfully submitted,

*s/Scott R. Dinin*
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
E-mail: [inbox@dininlaw.com](mailto:inbox@dininlaw.com)
Counsel for Plaintiff